# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANQUILLO AGUIRRE, et al., | Case No.: 1:17-cv-01197-JLT |
| Plaintiffs, | ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING THE ACTION |
| v. | |
| VIVINT SOLAR DEVELOPER, LLC, | |
| Defendants. | |

Tranquilino Aguirre asserts Vivint Solar Developer, Inc., engaged in deceptive and unlawful business practices by misrepresenting the rate he would pay for electricity after installation of solar panels and by requiring non-English speaking customers to sign contracts in English. Vivint contends Plaintiff signed a binding arbitration agreement and seeks a dismissal of the action or a stay of the action to allow completion of arbitration. (Doc. 8) For the following reasons, the Court finds the Federal Arbitration Act applies and the parties must engage in arbitration. Accordingly, Vivint's request to compel arbitration is **GRANTED** and the matter is **STAYED**.

## I.     Background

Plaintiff alleges that in May 2014, a representative of Vivint came to his residence and "represented to Plaintiff that Plaintiff's energy bill would decrease if Defendant installed solar panels at Plaintiff's residence." (Doc. 1 at 4, ¶¶ 16, 18) Plaintiff asserts, "Since Plaintiff solely speaks Spanish, the negotiation between Plaintiff and Defendant was conducted solely in Spanish." (*Id.*, ¶ 17)

1

However, once negotiations were complete, "Defendant required Plaintiff to sign an English-language contract." (*Id.*, ¶ 19) Plaintiff reports he "protested signing such a contract since Plaintiff only spoke Spanish." (*Id.*, ¶ 20) According to Plaintiff, "Defendant neither provided Plaintiff a Spanish translation of the contract nor did Defendant mail a Spanish translation of the contract to Plaintiff at any time thereafter." (*Id.*, ¶ 21) Plaintiff contends Vivint is liable for a violation of California Civil Code § 1632(b) for the failure to provide a Spanish translation. (*Id.*, ¶ 24)

Plaintiff contends that after his solar panels were installed, he "did not experience any energy savings as promised by Defendant." (Doc. 1 at 4, ¶ 22) He asserts his electricity bill has "increased each month with the solar panels installed." (*Id.*, ¶ 23) As a result, Plaintiff contends Vivint is liable for fraudulent business practices in violation of California Business & Professions Code § 17200. (*See id.* at 10, ¶¶ 62-64)

On October 19, 2017, Defendant responded to the complaint by filing the motion to dismiss or to compel arbitration and stay the proceedings by asserting "Plaintiff entered into a valid and enforceable arbitration agreement requiring his claims to be submitted to arbitration." (Doc. 8 at 2) In January 2018, the parties requested the hearing on the matter be continued because they were "exploring resolution of the matter," and the Court continued the hearing to March 2018. (Doc. 17 at 2; Doc. 18) Plaintiff did not oppose the motion and the Court found the moving papers were sufficient for a decision without oral arguments. Accordingly, the matter was taken under submission pursuant to Local Rule 230(g).

**II.     Arbitration Terms**

The Residential Power Purchase Agreement ("PPA") signed by Plaintiff includes an arbitration provision informing the customer that it affects legal rights. (Doc. 8-1 at 3; *see also* Doc. 8-4 at 2-3) The arbitration provision indicates in relevant part:

> BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT (I) YOU ARE HEREBY WAIVING THE RIGHT TO A TRIAL BY JURY; AND (II) YOU MAY BRING CLAIMS AGAINST US ONLY IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. You and We agree to arbitrate all disputes, claims and controversies arising out of or relating to (i) any aspect of the relationship between You and Us, whether based in contract, tort, statute or any other legal theory; (ii) this Agreement or any other agreement concerning the subject matter hereof; (iii) any breach, default, or termination of this Agreement; and

    (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this Section [].

(Doc. 8-1 at 3; *see also* Doc. 8-4 at 2-3) (emphasis in original)  The agreement indicates that by initialing the arbitration provision, they "are giving up any rights [they] might possess" to have a trial by jury, "judicial rights to discovery and appeal." (Doc. 8-1 at 6, emphasis omitted)  Plaintiff signed the PPA and initialed the arbitration provision. (*See* Doc. 8-4 at 3)

### **III. The Federal Arbitration Act ("FAA")**

  The FAA applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2.  It is undisputed that Vivint Solar operates nationwide and its activities affect interstate commerce. (*See* Doc. 8-1 at 4)  Thus, the FAA governs the arbitration policy.

  Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A party seeking to enforce arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

  The court's role in applying the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems*, 207 F.3d 1126, 1130 (9th Cir. 2000), citing 9. U.S.C. § 4.  "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*; *see also* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" (emphasis added)).  Importantly, because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

  A party opposing arbitration has the burden to demonstrate the claims at issue should not be sent to arbitration. *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also*

*Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("the parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## IV. Discussion and Analysis

### A. Validity of the arbitration agreement

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002). Because Plaintiff is a resident of California and Defendant seeks to compel arbitration in this state, the Court looks to California law to determine whether there is a valid arbitration agreement between the parties.

Pursuant to California law, the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)). An arbitration agreement may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011); *see also* Cal. Code Civ. Proc. § 1281 (explaining an arbitration agreement may only be invalidated upon the same "grounds as exist for the revocation of any contract"). Under California law, an arbitration agreement may be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281.

#### 1. Consent

Generally "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). However, it does not appear that the parties were not capable of consent or did not consent to the terms of the PPA.

4

To the extent that Plaintiff may have raised his inability to speak or read English to indicate he was unable to do so, this does not mandate a finding that he did not consent to the terms of the contract. *See, e.g., Morales v. Sun Constructors, Inc.*, 541 F.3d 218 (3rd Cir. 2008) (holding a Spanish-speaking employee was bound by the arbitration agreement that he signed, even though he was unable to read it); *Mohebbi v. Khazen*, 2014 WL 6845477 (N.D. Cal. 2014) ("party cannot avoid the terms of an agreement he signs on the ground that he did not understand the language in which the contract was written"). Contracting parties manifest mutual assent when a "specific offer is communicated to the offeree, and an acceptance is subsequently communicated to the offeror." *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007), citing *Russell v. Union Oil Co.*, 7 Cal. App. 3d 110, 114 (Ct. Cal. App. 1970). The allegations of the complaint support a conclusion that a Vivint sales representative explained the PPA to Plaintiff who not only signed the PPA but initialed the arbitration provision. Thus, Plaintiff indicated his consent to the PPA.

### 2. Unconscionability

A contract "is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)). Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results." *Stirlen v. Supercuts*, Inc., 51 Cal.App.4th 1519, 1532 (1997) (citations omitted). Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree. *Davis*, 485 F.3d at 1072; *Stirlen,* 51 Cal. App. 4th at 1532. Consequently, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Cal.4th 83, 99 (2000)).

#### a. Procedural unconscionability

Procedural unconscionability focuses on the "manner in which the contract was negotiated and the circumstances of the party at the time." *Kinney v. United Healthcare Servs*., Inc., 70 Cal. App. 4th 1322, 1329 (1999). The Court must consider both oppression and surprise "due to unequal bargaining power." *Armendariz,* 24 Cal. 4th at 114. Oppression derives from a lack of "real negotiation and an

absence of meaningful choice," while surprise arises from the terms of the bargain being "hidden in a prolix printed form," or drafted in "fine-print terms." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

### i. Oppression

The threshold issue for oppression with procedural unconscionability "is whether the subject arbitration clause is part of a contract of adhesion." *Stirlen*, 51 Cal. App. 4th at 1532; *see also Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001). A contract of adhesion "is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). An arbitration clause on a "take it or leave it" basis demonstrates "quintessential procedural unconscionability." *Aral v. Earthlink, Inc.*, 134 Cal.App.4th 544, 557 (2005). Accordingly, the Court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Services*, 70 Cal. App. 4th 1322, 1327 (1999).

It is undisputed that Vivint's PPA terms were offered on a "take it or leave it" basis—giving users the option to either accept the terms or find another solar service. Accordingly, the "oppression" element is satisfied.

### ii. Surprise

Under California law, Plaintiff cannot avoid the terms of a contract by asserting he did not—or was unable to—read the terms of the PPA by prior to signing it. *See Madden v. Kaiser Found. Hospitals*, 17 Cal. 3d 699, 710 (1976) (the "general rule [is] that one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument"); *Marin Storage & Trucking, Inc.*, 89 Cal.App.4th 1042, 1049 (2001) ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing"). Plaintiff is unable to show "surprise" because the terms were not hidden from view or drafted in "fine-print terms." *See Bruni*, 160 Cal. App. 4th at 1288; *Sanchez*, 61 Cal. 4th at 911.

Because the agreement to submit to the dispute resolution program was offered on a "take it or leave it" basis, the agreement was procedurally unconscionable. *Circuit City Stores, Inc. v. Adams*,

279 F.3d 889, 893 (9th Cir. 2002). However, the lack of surprise supports a conclusion that the level of procedural unconscionability is lessened. *See Stirlen*, 51 Cal.App.4th at 1532 (directing the court to consider both "oppression and surprise").

### b. Substantive unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (Ct. App. 2002). While "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," substantive unconscionability "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting the forum for itself." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (quoting *Armendariz,* 24 Cal. 4th at 118). Thus, the focus of the Court's inquiry is whether an agreement is one-sided and will have an overly harsh effect on the party not given an opportunity to negotiate its terms. *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 854 (2001).

The Ninth Circuit instructs courts applying California law to arbitration agreements "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149; *see, e.g., Ingle v. Circuit City Stores, Inc.*, 328 F.3d at 1165, 1180 (2003) (finding an arbitration agreement substantively unconscionable upon review of the agreement's provisions, such as claims subject to arbitration, fee and cost-splitting arrangements, remedies available, and termination/ modification of the agreement).

### i. *Claims subject to arbitration*

An arbitration agreement that compels arbitration for claims of the individual but exempts from arbitration those claims of the corporation is substantively unconscionable. *See Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785 (2002) (citing *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175-76 (Ct. App. 2002)). In this case, the PPA informs customers that Vivint agrees to arbitrate "all disputes, claims and controversies arising out of or relating to (i) any aspect of the relationship between You and Us . . . (ii) this Agreement or any other agreement concerning the subject matter hereof; (iii) any breach, default, or termination of this Agreement." (Doc. 8-1 at 5) Thus, it does not appear that Defendant excluded claims it may bring against Plaintiff or other customers from the arbitration agreement. Accordingly, the claims subject to arbitration are not unconscionable. *See*

*Ferguson*, 298 F.3d at 784, n.6 (explaining substantive unconscionability may be demonstrated when a defendant seeks to enforce "what is essentially a unilateral arbitration agreement").

### ii. Filing fees and cost arrangement

An arbitration agreement containing a cost-splitting provision is substantively unconscionable. For example, the Ninth Circuit found a provision substantively unconscionable when the agreement forced the plaintiffs to pay the filing fee up to a maximum of $125.00 and share costs equally after the first day of arbitration. *Ferguson*, 298 F.3d at 781; *see also Ingle*, 328 F.3d at 1177-78 (finding a provision substantively unconscionable that stated "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award"). Similarly, a party cannot be required "to bear any *type* of expense that [he or she] would not be required to bear . . . in court." *Armendariz*, 24 Cal. 4th at 110 (emphasis in original)

The PPA indicates: "If You initiate the arbitration, You shall be responsible to pay $250." (Doc. 8-4 at 3) In addition, the PPA indicates "fees, travel expenses, and other costs of the arbitration shall be borne by [the customer] and [Vivint] in accordance with the JAMS Rules and applicable law." (*Id.*) This fee is similar to a filing fee and is a fraction of what it costs to file a complaint. Thus, there is no indication that Plaintiff would be require to incur any *type* of expense other than similarly expenses that are required to proceed in court. Further, there is no indication that Plaintiff could be held responsible for half the cost of arbitration. Accordingly, the fees and cost provision is not substantively unconscionable.

### iii. Limitations on discovery

California law requires that an arbitration agreement "provide for adequate discovery." *Armendariz*, 24 Cal. 4th 83 at 122. In *Armendariz*, the court observed that parties are "permitted to agree to something less than the full panoply of discovery provided in Code of Civil Procedure section 1283.05." *Id.* at 106.

As noted above, the PPA incorporates JAMS Rules, which are publically available and permit discovery, including "at least one deposition" and additional discovery upon request to the arbitrator. *See, e.g., Toho-Towa Co. v. Morgan Creek Prod.*, Inc., 217 Cal. App. 4th 1096, 1110 (2013) (referring to discovery in a JAMS arbitration). Because the PPA incorporates JAMS Rules, it provides adequate

discovery during the arbitration proceedings, and is not substantively unconscionable. *See Sanchez v. Homebridge Fin. Servs.*, 2018 U.S. Dist. LEXIS 45786 at *16 (E.D. Cal. Mar. 20, 2018) (finding a provision incorporating JAMS Rules did not include "a substantively unconscionable limitation on discovery").

### iv. Agreement as a whole

Although Plaintiff has not opposed the motion, the Court has reviewed the arbitration provision as a whole. Refusing to enforce an arbitration agreement is appropriate "only when an agreement is permeated by unconscionability." *Armendariz*, 24 Cal.4th 83 at 122 (internal quotation marks omitted). For example, the Ninth Circuit found an arbitration agreement was "permeated by unconscionable clauses" where there was a "lack of mutuality regarding the type of claims that must be arbitrated, the fee provision, and the discovery provision." *Ferguson*, 298 F.3d at 788. Here, the terms, taken as a whole, do not appear substantively unconscionable.

### 3. Conclusion

The parties were capable of consent, did in fact consent, and there was a lawful object to the contract. Further, the terms of the agreement are not permeated with unconscionability. Accordingly, there is no evidence that the arbitration provision in the PPA is not a valid contract.

### B. Whether the Agreement encompasses the Disputed Issues

To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement. "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 584-86 (1960).

The arbitration provision in this case confers power upon the arbitrator to address "any aspect of the relationship between [the customer] and [Vivint Solar]," as well as "the interreptation, validity, or enforceability of [the] Agreement, including the determination of the scope or applicability" of the arbitration provision. (Doc. 8-1 at 5-6; *see also* Doc. 8-4 at 3) With this broad definition, the agreement clearly encompasses Plaintiff's claims against Vivint. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such

as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

### C. Entry of a Stay

The FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C § 3.

Indeed, the Seventh and Tenth Circuits have adopted the view that a stay is the most reasonable approach rather than a dismissal, explaining: "[I]t would be 'wasteful' and inconsistent 'with principles of judicial economy' for a court which has jurisdiction of the parties to be required to dismiss the parties, and to compel one of them to sue in another forum to enforce its award under § 9." *Denver & Rio Grande W. R. Co. v. Union Pac. R. Co*., 868 F. Supp. 1244, 1250 (D. Kan. 1994) *aff'd,* 119 F.3d 847 (10th Cir. 1997), quoting *In re VMS Sec. Litig.*, 21 F.3d 139, 145 (7th Cir. 1994). Therefore, the Court the matter will be stayed pending the completion of arbitration.

### V. Conclusion and Order

Defendant met its burden to demonstrate there is a valid arbitration agreement that encompasses the issues in dispute. As a result, "there is a presumption of arbitrability" and the motion to compel arbitration should not be denied. *See AT&T Tech., Inc.*, 475 U.S. at 650.

Accordingly, the Court **ORDERS**:

1. Defendant's motion to compel arbitration is **GRANTED**;
2. The matter is **STAYED** to allow the completion of the arbitration;
3. Within 120 days and every 120 days thereafter, counsel **SHALL** file a joint status report.
4. Within 10 days of the determination by the arbitrator, counsel **SHALL** file a joint status report; and

5. The Court retains jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

IT IS SO ORDERED.

Dated: **April 9, 2018**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE